# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Kelly Humber,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No.\_\_\_-_____ |
| ) | |
| **The Habitat Company LLC and The** ) | |
| **Habitat Company of Alabama LLC** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343(4). This is a suit in equity authorized and instituted pursuant to the Equal Pay Act, Title VII of the "Civil Rights Act of 1964" as amended by the "Civil Rights Act of 1991," 42 U.S.C. Section 2000e *et seq* providing injunctive and other relief against sexual harassment or sexual discrimination in employment and U.S.C. Sections 216(b) and 629 for violations of the Age Discrimination in employment act

2. Plaintiff, Kelly Humber, has fulfilled all conditions precedent to institution of this suit under the "Civil Rights Act of 1964" as amended by the "Civil Rights Act of 1991." Plaintiff filed her charge of discrimination within 180 days of the last discriminatory act. The Plaintiff received a right to sue letter from the EEOC, following timely filing of her claim of discrimination. Plaintiff has filed this complaint within 90 days of the notification of her right to sue by the EEOC.

### II. PARTIES

3. Plaintiff, Kelly Humber, hereinafter "Humber," is an adult female who is over the age of forty, a citizen of the United States and a resident of Alabama. Plaintiff was employed by the Defendants at all relevant times until she was terminated in November 2016.

4. Defendants Habitat Company LLC (hereinafter "Habitat") and Habitat Company of Alabama LLC (hereinafter "Habitat AL") are Illinois limited liability companies which are doing and/or were doing business in Jefferson County, Alabama and are subject to the "Civil Rights Act of 1964."

### III. STATEMENT OF PLAINTIFF'S CLAIMS

3. Plaintiff alleges and incorporates paragraphs 1-4 by reference with the same force and effect as if fully set forth in detail herein below.

4. Plaintiff was an applicant for a position and/or employed by Defendants during all pertinent and relevant times set out herein.

5. On April 25, 2016, Humber noticed a job opening for a Property Manager Position with The Habitat Company.

6. Humber notified her former property manager, Sheryl Stoffregen, whom she knew worked for Habitat, to inquire about the position.

7. Stoffregen told Humber that she felt that Humber would be a great fit and to submit a resume for the position.

8. Humber submitted a resume and on April 26, 2017, Humber received a phone call from Julie Bode who works in the Human Resources Department for Habitat.

9. After Ms. Bode conducted a phone interview with Humber, she asked to set up an in-person interview with Mr. Ted Verner.

10. Humber interviewed with Mr. Verner and Ms. Stoffregen on April 28 for the Property Manager Position at The Park at Buckingham.

11. Humber had 17 years of experience in the Property Management Industry as both a Property Manager and Assistant Property Manager/Bookkeeper at market rate communities as well as tax-credit/mixed income communities ranging from 150 units to 1,020 units.

12. During Humber's interview with Mr. Verner, he seemed quite interested in her experience and indicated that they needed to fill the position immediately and that the final decision for placement would be made by Ms. Stoffregen.

13. Humber kept checking with Ms. Stoffregen to see if a decision had been made and on May 3rd, she asked Humber if she would be interested in an administrative position she had open at one of her other properties because Jason Walker, a 28 year old male with less experience, had been hired directly by Mr. Verner for the property manager position.

14. At the time, Humber had been working 50 miles (one way) from home and desperately needed to relocate to a position much closer to her house.

15. On June 1, 2016, Humber started her employment at The Park at Callington and Carlyle as the Administrative Assistant.

16. Humber was told at the time of accepting the position that her only duties would be entering invoices for both properties.

17. Humber's starting pay was $17 per hour.

18. On September 1, 2017, Sheryl called Humber into her office and informed her that the Property Manager for The Park at Callington and Carlyle, Jason Walker, had suggested a position status change that would result in a $2 per hour raise.

19. Humber was now going to become the Property Manager for the Park at Callington while Jason would remain the Property Manager at The Park at Carlyle.

20. Humber's pay would increase from $17 per hour to $19 per hour, but her duties would also increase to all of those that equal Jason Walker as the Property Manager of Callington and she would continue her already full time duties as the accounts payable processor.

21. While employed by Habitat, Humber made less money than Jason Walker and actually had more responsibilities and experience.

22. When Humber inquired about why she was making less money than a lesser experienced and younger male employee, she was told that Mr. Verner simply stated that if she wants to keep her job, she will take the $1 per hour increase that he suggested.

23. Humber was not initially hired for the Property Manager at Buckingham position because of her sex and/or age since Mr. Verner gave no other reason for why she was not hired as a property manager other than that he "did not have a good feeling about me."

24. Rather than hiring the more qualified applicant, Verner decided to hire a young male with considerably less experience than Humber.

25. Not only did Humber not get the position, Verner also passed over Shannon Farrabee who had even more experience than Humber.

**26.** When Humber was promoted to the position of property manager, she continued to be discriminated against based on her sex and/or age by failing to pay Humber a salary equal to or exceeding the pay that the less experienced male employee was paid.

### COUNT I: SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964

27. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

28. Defendants have discriminated against the Plaintiff on the basis of her sex in violation of Title VII in failing to take proper steps to insure that the Plaintiff was not discriminated against and placed in a hostile work environment or received disparate treatment on the basis of her sex.

29. The Plaintiff was discriminated against as set out above in the statement of facts for a failure to hired, a failure to promote, a failure to pay her a salary equal to or greater than a less experienced and less qualified mail employee.

30. Plaintiff has no plain, adequate or complete remedy at law, and this suit for back pay, injunctive relief, and declaratory judgment is her only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

### COUNT II: EQUAL PAY ACT

31. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

32. As set out above in the statement of facts, after Humber was promoted to property manager, she was not paid equal pay compared to similarly situated male employees who had less experience than Humber.

33. The Defendants' actions violate the Equal Pay Act.

### COUNT III: AGE DISCRIMINATION

34. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

35. Defendants have discriminated against the Plaintiff on the basis of her age in violation of the Age Discrimination in Employment Act by failing to take proper steps to insure that the Plaintiff was not discriminated against and/or received disparate treatment on the basis of her age.

36. The Plaintiff was discriminated against as set out above in the statement of facts for a failure to hired, a failure to promote, a failure to pay her a salary equal to or greater than a younger make employee with less experience.

37. Plaintiff has no plain, adequate or complete remedy at law, and this suit for back pay, injunctive relief, and declaratory judgment is her only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from defendant's unlawful policies and practices as set forth herein unless enjoined by this Court

### COUNT IV: NEGLIGENT HIRING, TRAINING, RETENTION AND SUPERVISION

38. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

39. The Defendant had a duty to hire, supervise, and train its employees and/or managers in the proper manner of dealing, on a day to day basis, with employees, in a non-harassing or discriminating fashion.

40. The Defendants were aware of Ted Verner's discriminatory and misogynist view towards women.

41. The Defendants negligently and/or wantonly breached the duty owed to the plaintiff in failing to take the appropriate steps to safeguard the plaintiff from harassing and/or discriminatory behavior

failing to properly train Ted Verner in proper conduct with employees, and failed to properly supervise Verner to assure that Verner would not act in a harassing and/or discriminatory fashion.

42. The plaintiff has been injured and damaged as a proximate result of the aforementioned breach.

### COUNT V: RESPONDEAT SUPERIOR / VICARIOUS LIABILITY

43. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

44. Defendants are vicariously liable for the actions of its employee, Ted Verner.

45. When Ted Verner engaged in sexist and misogynist behavior and discriminated against the Plaintiff, he was working within the line and scope of his employment.

46. The acts committed by Ted Verner were committed in the furtherance of the business of the Defendants.

47. Defendants participated in, authorized and/or ratified the wrongful acts of Ted Verner.

48. Defendants adopted or implicitly approved of the behavior of Verner.

49. Defendants had actual knowledge of the tortious conduct of Ted Verner and that the tortious conduct was directed and visited upon the Plaintiff.

50. Based upon this knowledge, Defendants knew, or should have known, that Ted Verner's conduct constituted sexual discrimination and/or a continuing tort.

51. Defendants failed to take adequate steps to remedy the situation.

52. As a result of the conduct and omissions of the Defendants, the Plaintiff has been damaged.

### IV. PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court assume jurisdiction of this action and award the Plaintiff the following relief:

I. Enter a declaratory judgment that defendants' acts, policies, practices and procedures as described herein have violated and continue to violate the rights of Plaintiff as secured by Title VII of the "Civil Rights Act of 1964" as amended.

II. Grant Plaintiff a permanent injunction enjoining defendants, its agents, successors, employees, attorneys and those acting with defendant or at the defendant's request from violating Title VII of the "Civil Rights Act of 1964" as amended.

III. Grant plaintiff an order requiring defendant to make her whole by granting appropriate declaratory relief, back pay, lost seniority, lost fringe benefits, attorney's fees, expenses, costs, compensatory damages (including but not limited to damages for mental anguish), and interest; and

IV. Grant the plaintiff compensatory and punitive damages for any and all state law claims;

V. Plaintiff prays for such other, further, different or additional relief which justice may require or to which Plaintiff is entitled to under law and equity.

**Plaintiff demands a trial by a struck jury**

Respectfully submitted,

/s/ Scott Harwell
Scott Harwell

**HARWELL LAW FIRM LLC**
109 Foothills Parkway #112
Chelsea, AL 35043
(205) 999-1099
Scott@HarwellLaw.com